**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

COURTNEY ROSS,
*on behalf of herself and others similarly situated*,

        Plaintiff,

        v.

NESTLE USA, INC.,

        Defendant.

---

Case No.: 16-CV-9563 (JGK)

**AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff COURTNEY ROSS, individually and on behalf of all others similarly situated, by her undersigned attorneys, as and for her Complaint against the Defendant, NESTLE USA INC., alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

        1.  Plaintiff COURTNEY ROSS, on behalf of herself and others similarly situated, by and through her undersigned attorneys, brings this class action against Defendant, NESTLE USA, INC, for the deceptive practice of marketing its Lean Cuisine® frozen meals as having "No

Preservatives" when many of them contain citric acid (2-hydroxypropane-1,2,3-tricarboxylic acid),

a well-known preservative commonly used in commercial food and drink products.

2.   Defendant sold Plaintiff and Class members, and continues to sell consumers, the

following products containing citric acid with misleading "No Preservatives" language:

    a.   Lean Cuisine® *favorites* Four Cheese Cannelloni
    b.   Lean Cuisine® *favorites* Cheese Ravioli
    c.   Lean Cuisine® *favorites* Fettuccini Alfredo
    d.   Lean Cuisine® *favorites* Classic Five Cheese Lasagna
    e.   Lean Cuisine® *favorites* Macaroni & Cheese
    f.   Lean Cuisine® *favorites* Five Cheese Rigatoni
    g.   Lean Cuisine® *favorites* Cheddar Potatoes with Broccoli
    h.   Lean Cuisine® *MARKETPLACE* Tortilla Crusted Fish
    i.   Lean Cuisine® MARKETPLACE Mushroom Mezzaluna Ravioli
    j.   Lean Cuisine® MARKETPLACE Cheese and Bean Enchilada Verde
    k.   Lean Cuisine® MARKETPLACE Cheese Tortellini
    l.   Lean Cuisine® MARKETPLACE Ricotta Cheese & Spinach Ravioli
    m.   Lean Cuisine® MARKETPLACE Spicy Mexican Black Beans & Rice
    n.   Lean Cuisine® *Comfort* Shrimp Alfredo
    o.   Lean Cuisine® *Craveables* Four Cheese Pizza
    p.   Any other Lean Cuisine® product that 1) contains citric acid, 2) is accompanied by "No Preservatives" on the label, and 3) does not contain meat, poultry, or eggs (collectively, the "Products")

Such Products are detailed under **EXHIBIT A**.

3.   Defendant engaged in deceptive labeling practices by expressly representing on its

Product labels and website that the Products have "No Preservatives" despite the presence of citric

acid.

4.   By deceptively marketing the Products as having "No Preservatives," Defendant

wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for

food products made free of preservatives.

5.   Defendant marketed its Lean Cuisine® Products in a way that is deceptive to

consumers under the consumer protection laws of New York. Defendant has been unjustly

enriched as a result of its conduct. For these reasons, Plaintiff seek the relief set forth herein.

6.   Plaintiff brings this proposed consumer class action on behalf of herself and all other persons who, from the applicable limitations period up to and including the present ("Class Period"), purchased any of Defendant's Products in New York for consumption and not resale.

## JURISDICTION AND VENUE

7.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.   This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendant operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

10.    Plaintiff COURTNEY ROSS is, and at all times relevant hereto has been, a citizen of the State of New York and a resident of New York County. On September 29, 2016 Plaintiff ROSS purchased  a Lean Cuisine® Four Cheese Pizza for personal consumption at a CVS located on Fifth Avenue in Manhattan for the purchase price of $3.39.

11.    As the result of Defendant's deceptive conduct as alleged herein, Plaintiff ROSS was injured when she paid the purchase price or a price premium for a Product that did not deliver what it promised. She paid the above sum on the assumption that this was for food free of preservatives and would not have paid this money had she known that it contained preservatives. Defendant promised Plaintiff ROSS a preservative-free meal but delivered something else entirely, thereby depriving her of the benefit of her bargain. Plaintiff ROSS, as a reasonable consumer, derived no value from Defendant's preservative-laden pizza, or at most derived very little value, so she was injured in an amount of up to $3.39. Damages can be calculated through expert testimony at trial. Further, should Plaintiff ROSS encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Products.

*Defendant*

12.   Defendant NESTLE USA, INC. is a corporation organized under the laws of Delaware with its headquarters at 800 North Brand Blvd, Glendale, CA 91203.  Its address for service of process is CT Corporation System, 1633 Broadway, New York, NY 10019.

13.   Defendant develops, markets and sells food products under the Lean Cuisine® brand name throughout the United States. The advertising for the Products, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising and labeling containing the misrepresentations alleged herein. The advertising and labeling for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Products. Defendant owns, manufactures and distributes the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

## Defendant Markets Its Products As Free of Preservatives Even Though They Contain Citric Acid

14.   Defendant manufactures, markets, advertises and sells its extensive Lean Cuisine® line of frozen products across the United States.

15.   The Products are available at numerous retail and online outlets such as Duane Reade, Target, and Amazon.com.

16.   In addition to the "No Preservatives" claim on the front of each Product, the official Lean Cuisine® website displays product descriptions and full lists of ingredients for most of the Products. The Products' webpages again and again make Defendant's "No Preservatives" misrepresentation. *See* **EXHIBIT A**

17.    While Plaintiff ROSS's purchase is not listed on the website as a "No Preservatives" product, it makes the same claim on its front label despite containing citric acid.  The ingredients list and the front label with its prominent "No Preservatives" misrepresentation are shown below:



INGREDIENTS: **CRUST** (ENRICHED FLOUR [WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], WATER, YEAST, SOYBEAN OIL, SUGAR, SOLUBLE CORN PRODUCT, DEHYDRATED GARLIC), **REDUCED FAT MOZZARELLA CHEESE** (PASTEURIZED PART SKIM MILK, NONFAT MILK, CHEESE CULTURES, MODIFIED CORNSTARCH*, SALT, VITAMIN A PALMITATE, ENZYMES, *INGREDIENT NOT IN REGULAR MOZZARELLA CHEESE), **WATER, TOMATO PASTE, SEASONING** (MALTODEXTRIN, MODIFIED CORNSTARCH, SUGAR, SALT, DEXTROSE, SPICES, SPICE EXTRACTIVES, DEHYDRATED GARLIC, CITRIC ACID, XANTHAN GUM, TRICALCIUM PHOSPHATE, CORN OIL), **2% OR LESS OF PARMESAN, ASIAGO, AND ROMANO CHEESES MADE FROM COW'S MILK** (PART-SKIM MILK, CHEESE CULTURE, SALT, ENZYMES), **MODIFIED FOOD STARCH, SALT, GARLIC POWDER, SPICES.** **CONTAINS: WHEAT, MILK INGREDIENTS.**

DISTRIBUTED BY: NESTLÉ USA, INC., SOLON, OH 44139 USA          **PARTIALLY PRODUCED WITH GENETIC ENGINEERING.**



By representing that the Products have "No Preservatives," Defendant sought to capitalize on consumers' preference for less processed products with fewer additives and the association between such products and a wholesome way of life. Consumers are willing to pay more for

products with no additives because of this association as well as the perceived higher quality,

health and safety benefits associated with preservative-free foods.

18.    The marketing research firm Mintel reports that more and more Americans are

concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they
> perceive the products as closely tied to health. New research from Mintel reveals
> that **84 percent of American free-from consumers buy free-from foods because
> they are seeking out more natural or less processed foods**. In fact, 43 percent of
> consumers agree that free-from foods are healthier than foods without a free-from
> claim, while another three in five believe the fewer ingredients a product has, the
> healthier it is (59 percent).
>
> Among the top claims free-from consumers deem most important are trans fat-free
> (78 percent) and preservative-free (71 percent).
>
> http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-
> from-foods-because-they-believe-them-to-be-more-natural-or-less-processed
> (last accessed 11/2/16)

19.    And alternet.org reports research showing that most Americans are prepared to pay a

premium price for such healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing
> to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness
> Survey that polled over 30,000 people online, 88 percent of Americans are willing
> to pay more for healthier foods. Global sales of healthy food products are estimated
> to reach $1 trillion by 2017, according to Euromonitor.
>
> When it comes to what consumers will be seeking out more of over the coming
> year, it may amount to single word. "Just think of the word no," Seifer said. "No
> preservatives, no additives, no growth hormones."
>
> http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 11/2/16)

20.    Given these trends, Defendant had a natural interest in misrepresenting its Products

as free of preservatives despite the presence of citric acid, as this provided a clear marketing

advantage over competitors who do not engage in such deceptive conduct.

**Citric Acid Is A Preservative**

21.     The FDA classifies citric acid as a preservative.  Citric acid is identified as a preservative in the FDA's Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.
(last accessed 11/2/16) (emphasis added)

22.     The FDA's classification of citric acid as a preservative is further confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites":

> The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **EXHIBIT B**, FDA Warning Letter dated October 6, 2010.

23.     Gos International, a leading distributor of market research, emphasizes citric acid's usefulness as a preservative in frozen foods like Defendant's: "Citric acid plays a vital role in the

stability of frozen food. The increased demand for canned and frozen food sector has elevated the demand for citric acid globally."[1]

24.     This is confirmed by the scholarly literature:

> The chelating and acidic properties of citric acid enable it to optimize the stability of frozen food products by enhancing the action of antioxidants and inactivating naturally present enzymes which could cause undesirable browning and loss of flavor.

> *Kirk-Othmer Food and Feed Technology*, Volume 1, p. 262 (John Wiley & Sons, 2007)

> In the processing of frozen foods, citric acid is used for several reasons.  Through its chelating and pH adjustment properties, citric acid is able to optimize the stability of frozen food products by enhancing the activity of antioxidants and inactivating enzymes.

> Laszlo P. Somogyi, "Direct Food Additives in Fruit Processing," in *Processing Fruits: Science and Technology*, Second Edition, Diane M. Barrett, Laszlo Somogyi, and Hosahalli S. Ramaswamy, eds., p. 302 (CRC Press, 2004)

25.     Health Canada, an official government organization, notes that citric acid functions as a preservative for fats and oils, as well as for meat, seafood, and poultry – all of which are present in many of Defendant's Products.[2]

26.     Other manufacturers of frozen dinners admit that citric acid is a preservative and do not make deceptive "No Preservatives" claims.  For example, the ingredients list of Hungry-Man® Selects Spicy Classic Fried Chicken acknowledges that citric acid is being used to preserve flavor or freshness at numerous points, with reference to the chicken, the mashed potatoes, and the seasoning:

---

[1] https://www.linkedin.com/pulse/citric-acid-market-grade-food-industrial-others-form-powder-reports
[2] http://www.hc-sc.gc.ca/fn-an/securit/addit/list/11-preserv-conserv-eng.php



https://www.walmart.com/ip/Hungry-Man-Selects-Spicy-Classic-Fried-Chicken-Dinner-16-oz/35264434 (last accessed 12/05/16)

      27.    Citric acid's ability to protect flavor is likewise acknowledged in the ingredients

list of the Jimmy Dean Delights® Turkey Sausage Breakfast Bowl:



INGREDIENTS: PRE-COOKED SCRAMBLED EGG WHITES (EGG WHITES, NONFAT MILK, MODIFIED CORN STARCH, WHEY PROTEIN ISOLATE, SOYBEAN OIL, CARRAGEENAN, SALT, NATURAL EGG FLAVOR, GUAR GUM, XANTHAN GUM), **DICED POTATOES** (POTATOES, VEGETABLE OIL [SOYBEAN AND/OR COTTONSEED OILS], MALTODEXTRIN, SALT, DEXTROSE, TETRASODIUM PYROPHOSPHATE AND SODIUM ACID PYROPHOSPHATE [TO MAINTAIN NATURAL COLOR]), **COOKED TURKEY SAUSAGE CRUMBLES, CARAMEL COLOR ADDED, BHT AND CITRIC ACID ADDED TO HELP PROTECT FLAVOR** (GROUND TURKEY, SEASONING [SALT, DEXTROSE, SUGAR, SPICES, BHT, CITRIC ACID], CARAMEL COLOR), **REDUCED FAT SHREDDED MILD CHEDDAR CHEESE** ((PASTEURIZED PART SKIM MILK, CHEESE CULTURE, SALT, ENZYMES, ANNATTO COLOR, VITAMIN A), CELLULOSE (TO PREVENT CAKING), MAY ALSO CONTAIN NATAMYCIN (A MOLD INHIBITOR)), **WATER.**
**CONTAINS: MILK, EGGS**

DISTRIBUTED BY THE HILLSHIRE BRANDS COMPANY, CHICAGO, IL 60607 USA
©2016 TYSON FOODS, INC.

28.     Citric acid's nature as a preservative is also acknowledged in another of Defendant's product lines, DiGiorno® pizza, which unlike Lean Cuisine® does not target health-conscious consumers.  Below is the ingredients list in the DiGiorno® Traditional Crust pepperoni pizza, where citric acid is clearly described as a flavor-protector:



29.     Defendant also acknowledges citric acid's preservative qualities in its Lean Pockets® garlic chicken white pizza, where citric acid is described as a preservative right alongside potassium sorbate:

**Defendant's "No Preservatives" Misrepresentation Violates Federal and State Laws**

30.     New York and federal law place similar requirements on food companies that are designed to ensure that the claims they make about their products to consumers are truthful and accurate. Both New York and federal laws were violated by Defendant's deceptive "No Preservatives" misrepresentations.

31.     Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded.. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

32.     Defendant's deceptive misrepresentations violate N.Y. Agm. Law § 201, which likewise deems that "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular."

33.     Independently of these, Defendant's deceptive misrepresentations also violate NY GBL § 349, which declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

**Plaintiff's Claims Are Consistent With Federal Law**

34.     Plaintiff's claims are consistent with the meaning of "chemical preservative" as defined in 21 C.F.R. § 101.22(a)(5):  "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

35.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in  "He tends to exaggerate"  or  "The gym tends to get  very busy at  around  six o'clock."  *See* http://www.macmillandictionary.com/us/dictionary/american/tend.  The scientific evidence cited

above establishes that citric acid "tends" to prevent or retard the deterioration of food.  And this remains true regardless of the subjective purpose or intent of whoever has added the citric acid to a food—which is therefore irrelevant to the question of whether the citric acid in Defendant's Products is a preservative.

36.     21 CFR § 101.22(a)(5) does limit the definition of "chemical preservative" based on manufacturer's intent for <u>some</u> preservatives. Specifically, "chemicals applied ***for*** their **insecticidal** or **herbicidal** properties," (emphasis added) are not classified as preservatives even though they tend to prevent or retard deterioration.  However, neither of these two purpose-based exceptions to the general definition of a preservative are applicable to the citric acid in the Products.

37.     Even if citric acid's status as a preservative depends on the "function" it is serving, this function presents a question of fact, not law, and Plaintiff alleges that Defendant's citric acid is functioning as a preservative.  See *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 U.S. Dist. LEXIS 33936, at *13-14, (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors or chemical preservatives.").

38.     Plaintiff's claims as alleged herein are not preempted because they do not address the Products' ingredients lists as regulated under 21 C.F.R. § 101.22(j), but only Defendant's affirmative misrepresentation of "No Preservatives."  Thus, Plaintiff's claims are not preempted by any FDA regulations.  Indeed, FDA regulations specifically state that claims like "contains no preservatives" are non-nutritive claims, 21 C.F.R. § 101.65(b)(2),  which thus fall outside the scope of FDA requirements. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist.

LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim ifthe state requirement is outside the scope of the relevant federal requirements").

**Defendant's Misrepresentations Were Material To A Reasonable Consumer and Relied Upon By Plaintiff and the Class**

39.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).

40.     A representation that a product has "No Preservatives" is material to a reasonable consumer when deciding to purchase a product. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products have "No Preservatives" because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research above).

41.     Defendant's Product labeling or misleading website were material factors in Plaintiff's and Class members' decisions to purchase the Products. Relying on Defendant's Product labeling or misleading website, Plaintiff and Class members believed that they were getting Products that had "No Preservatives" and made their purchasing decisions on the basis of this mistaken belief—intentionally induced by Defendant.

**Plaintiff and the Class Were Injured As The Result of Defendant's Deceptive Practices**

42.     Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

43.     As a result of Defendant's misrepresentations, Plaintiff and thousands of others in New York and throughout the United States purchased the Products and were injured thereby. They paid money for food that was represented to them as preservative-free, and then received food that was preservative-laden.  Plaintiff and the Class were thus deprived of the benefit of their bargain.  They would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth.  Thus, they were injured in the amount of the purchase price or, alternatively, in the amount of the price premium they paid—the amount they paid beyond what they would have been willing to pay had they not been deceived about the Products (for which they would not have paid the full purchase price—see consumer behavior research above).

44.     *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendants' "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendants' misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums, that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…")

## CLASS ACTION ALLEGATIONS

45.     Plaintiff ROSS seeks to represent the following class:

> All individuals who made retail purchases of the Products in New
> York for consumption and not resale during the applicable
> limitations period, and/or such subclasses as the Court may deem
> appropriate. ("the Class")

The proposed Class excludes current and former officers and directors of Defendant, members of

the immediate families of the officers and directors of Defendant, Defendant's legal

representatives, heirs, successors, assigns, and any entity in which they have or have had a

controlling interest, and the judicial officer to whom this lawsuit is assigned.

46.     Plaintiff reserves the right to revise the Class definition based on facts learned in

the course of litigating this matter.

47.     This action is proper for class treatment under Rule 23 of the Federal Rules of Civil

Procedure.

48.     While the exact number and identities of other Class members are unknown to

Plaintiff at this time, Plaintiff is informed and believes that there are thousands of Class members.

Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

49.     Questions of law and fact arise from Defendant's conduct described herein. Such

questions are common to all Class members and predominate over any questions affecting only

individual Class members. These include:

a.     whether labeling "No Preservatives" on Products containing citric acid was false

and misleading;

b.     whether Defendant engaged in a marketing practice intended to deceive consumers

by labeling "No Preservatives" on Products containing citric acid;

c.  whether Defendant deprived Plaintiff and the Class of the benefit of their bargain because the Products purchased were different than what Defendant warranted;

d.  whether Defendant deprived Plaintiff and the Class of the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e.  whether Defendant caused Plaintiff and the Class to purchase a substance that was other than what was represented by Defendant;

f.  whether Defendant has been unjustly enriched at the expense of Plaintiff and other Class members by its misconduct;

g.  whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

h.  whether Defendant should be barred from marketing the Products as having "No Preservatives."

50.     Plaintiff's claims are typical of those of Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and

course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

51.     Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

53.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

54.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

55.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

56.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

57.     Plaintiff ROSS realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

58.     Plaintiff ROSS brings this claim on behalf of herself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

59.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

60.     Under the § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

61.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

62.     The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Products contain "No Preservatives" were unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

63.     The foregoing deceptive acts and practices were directed at customers.

64.     Defendant should be enjoined from marketing its products as containing "No Preservatives" as described above pursuant to NY GBL § 349.

65.     Plaintiff ROSS, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL§ 349, and such other relief as this Court deems just and proper.

**COUNT II**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

66.     Plaintiff ROSS realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

67.     Plaintiff ROSS brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

68.     Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

69.     The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, one or more of the following reasons:

a.     Defendant knowingly and falsely represented and advertised that the Products have "No Preservatives" with an intent to cause Plaintiff and members of the Class to believe that they do not contain preservatives;

b.     Defendant caused Plaintiff and the Class to suffer confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct; and

c.     Defendant intended that Plaintiff and the members of the Class rely on its misrepresentations, so that Plaintiff and Class members would purchase the Products.

70.     The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Products have "No Preservatives" were unfair, deceptive, and misleading and are in violation of NY GBL § 349.

71.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

72.     Defendant's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's general course of deception.

73.     By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have "No Preservatives". This is a deceptive business practice that violates NY GBL § 349.

74.     Defendant's "No Preservatives" claim misled Plaintiff and is likely in the future to mislead reasonable consumers. Had Plaintiff and members of the Class known the truth about the Products, they would not have purchased them.

75.     The foregoing deceptive acts and practices were directed at consumers.

76.     The foregoing deceptive acts and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other members of the Class are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs. Damages can be calculated through expert testimony at trial.

25

## COUNT III

## DAMAGES AND INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING)

77.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78.     Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 350.

79.     NY GBL § 350 provides that false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is unlawful.

80.     NY GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

81.     Any person who has been injured by reason of any violation of the NY GBL § 350 may bring an action in his own name to enjoin the unlawful act or practice, an action to recover his actual damages or five hundred dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

82.     As fully alleged above, by advertising, marketing, and selling the Product to Plaintiff and other members of the Class, Defendant engaged in, and continues to engage in, false advertising.

83.     Defendant engaged in false advertising by advertising, marketing, and selling the Product as containing no preservatives when this is not true.

26

84.     Defendant intended for Plaintiff and Class members to rely on such misrepresentations in deciding to purchase the Product. Justifiable reliance is no longer an element to a § 350 claim, however, following the New York Court of Appeals case *Koch v. Acker, Merrall & Condit*, NY 3d, 2012 NY Slip Op 02254 (March 27, 2012).

85.     Plaintiff and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the members of the Class will be irreparably harmed unless the unlawful actions of Defendant are enjoined because Defendant will continue to falsely advertise an inflated discount.

86.     Defendant should be enjoined from falsely advertising the Products contain no preservatives.

87.     Plaintiff and Class members suffered a loss as a result of Defendant's false advertising.  Specifically, as a result of Defendant's false advertising, Plaintiff and other Class members suffered monetary losses associated with the purchase of the Products. Had Plaintiff and other Class members known the truth about the Products, they would not have been willing to pay the premium price Defendant charged, or they would not have purchased the Product at all.

88.     As a direct and proximate result of Defendant's violation of NY GBL § 350 above, Plaintiff and other members of the Class have suffered damages in an amount to be determined at trial.


## COUNT IV

## COMMON LAW FRAUD

89.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

90.     Defendant intentionally made materially false and misleading representations regarding the absence of preservatives in its Products.

91.     Plaintiff and Class members were induced by, and reasonably relied on, Defendant's false and misleading representations.  They did not know, and could not have known, the truth about the Product at the time when they purchased the Product.

92.     Defendant knew that its representations were false and misleading.   Defendant nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner. Had Defendant adequately disclosed the true nature of the Product, Plaintiff and Class members would not have purchased the Product.

93.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

94.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.   An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Class;

b.   An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all members of the Class the amounts paid for the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorney's fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: March 31, 2017

Respectfully submitted,


By: ____*/s/ C.K. Lee*_____
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*